Filed 8/26/24  P. v. Williams CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> JEROME LEMEAL WILLIAMS, <br><br> Defendant and Appellant. | H050555 <br> (Monterey County <br> Super. Ct. No. 22CR002896) |

## I.  INTRODUCTION

A jury convicted defendant Jerome Lemeal Williams of assault by means of force likely to cause great bodily injury (Pen. Code, § 245, subd. (a)(4); count 1),[1] battery causing serious bodily injury (§ 243, subd. (d); count 2), and attempting by means of threat or violence to deter or prevent an executive officer from performing lawful duties (§ 69; count 3).  As to count 1, the jury found true an enhancement that defendant personally inflicted great bodily injury upon the victim (§ 12022.7, subd. (a)).  As to count 2, the jury found true a "factual allegation" that defendant "personally inflicted serious bodily injury" upon the victim (§§ 1192.7, subd. (c)(8), 12022.7, subd. (a)).  The trial court sentenced defendant to a total term of five years eight months, suspended execution of the sentence, and placed defendant on probation for three years.

---

[1] All further statutory references are to the Penal Code unless otherwise specified.

Defendant raises seven arguments on appeal: (1) the prosecutor committed misconduct by misstating the law as to the required intent and allowable defenses for count 3, and his trial counsel was ineffective for failing to object or present the defense that defendant lacked the specific intent required for this offense; (2) his trial counsel was ineffective for stipulating to the conditional examination of a witness and for failing to object to the introduction of a recording of the conditional examination at trial without a finding of the witness's unavailability; (3) the prosecutor committed misconduct when he misstated the law regarding the standards for great bodily injury and serious bodily injury, and defendant's trial counsel was ineffective for failing to object; (4) the trial court misstated the law by instructing the jury that the allegation associated with count 2 required proof of serious bodily injury instead of great bodily injury; (5) insufficient evidence existed to support the allegation associated with count 2 because great bodily injury is an element of count 2 and thus the allegation cannot be found true, or alternatively the trial court's denial of defendant's motion to strike the enhancement resulted in an unauthorized sentence; (6) the great bodily injury enhancement associated with count 1 should be stayed pursuant to section 654; and (7) the cumulative effect of the errors alleged above requires reversal.

For reasons discussed below, we conclude that execution of defendant's sentence on count 2 should be stayed under section 654. As so modified, we will affirm the judgment.[2]

---

[2] Both parties assert that the trial court improperly failed to complete a Judicial Council form CR-290 (abstract of judgment) and include this form in the appellate record. "When a probationary order or a judgment, other than of death, has been pronounced, a copy of the entry of that portion of the probationary order ordering the defendant confined in a city or county jail as a condition of probation, or a copy of the entry of the judgment, or, if the judgment is for imprisonment in the state prison or imprisonment pursuant to subdivision (h) of Section 1170, either a copy of the minute order or an abstract of the judgment . . . shall be forthwith furnished to the officer whose duty it is to execute the probationary order or judgment, and no other warrant or authority (continued)

## II. BACKGROUND

Defendant, his partner, four children, and another adult lived in a hotel room in Salinas starting in May or June 2020. Soon after defendant and the other people started living in the hotel room, the hotel's general manager offered defendant a special rate of $99 per night because defendant was experiencing financial difficulties. The hotel's general manager utilized a special COVID-19 rate normally reserved for medical staff with the understanding that defendant would stay in the hotel for an extended period.

In June 2021, the hotel notified defendant and his partner that the hotel would no longer offer the discounted rate and that an insurance assessor found defendant and his family exceeded the maximum occupancy for the room. The hotel followed up with another letter in July 2021, this time notifying defendant and his partner that the couple was behind in paying for their hotel room and asking them to settle their account by August 20, 2021. Defendant and his family continued to stay in the room, booking through third-party websites at substantially higher rates than the $99 per night rate. This caused defendant to fall further behind in paying the bill under an agreement with the hotel's general manager where defendant and his partner were supposed to pay the bill in cash every two weeks.

On August 29, 2021, defendant approached an employee at the hotel's front desk. According to the employee, defendant said, " 'I'm just letting you guys know, if any of you guys come knocking on my door on the 31st asking me to leave, I'm going to beat the shit out of whoever knocks on my door. I don't care who it is.' " The employee testified that defendant appeared angry as he said this and that she felt unsafe. The

is necessary to justify or require its execution." (§ 1213, subd. (a).) "If a copy of the minute order is used as the commitment document, the first page or pages shall be identical in form and content to that prescribed by the Judicial Council for an abstract of judgment, and other matters as appropriate may be added thereafter." (*Id.*, subd. (b).) The parties identify no way in which the minute order is not identical in form and content to that prescribed by the Judicial Council for an abstract of judgment. Thus, we decline to order the trial court to produce a Judicial Council form CR-290.

employee called the hotel's general manager, who was off that day, to report defendant's statement. The next morning, the hotel general manager came to work and saw defendant sitting in front of the hotel. The general manager, remembering the report from the front desk agent the previous day, told defendant, " 'Don't make threats to my staff.' " The general manager testified that defendant then "jumped up and started yelling and coming towards" him, saying, " 'Are you trying to kill me, motherfucker?' " The hotel general manager testified that he stepped back and that defendant continued yelling, so the general manager turned away to head into the hotel when he was struck in the left side of the face in his jaw. The hotel manager testified that he dropped to his knees and was "stunned," and that as he was on his knees, defendant stood over him and said, " 'Are you still trying to kill me, motherfucker?' " The general manager testified that as he started to get up, defendant punched him again over his right eye.

The hotel's assistant general manager and another hotel employee came out to assist the general manager and found the general manager on the ground. The assistant general manager testified that she witnessed defendant say, " 'You're not going to kick me out on the 31st.' " The assistant general manager testified that she witnessed defendant strike the general manager the second time, which she characterized as "a hard punch." She testified that she called police, and that defendant told her, " 'I know where you live . . . [a]nd I know what types of cars you drive.' " The assistant general manager testified that she observed "a lot of blood" coming from the sides of the general manager's face and that there was "a pile of blood" on the ground. Defendant then went into the hotel.

Officer Anthony Avila arrived in response to the assistant general manager's call for assistance. Officer Avila checked on the hotel's general manager, who was laying on the ground and was bleeding with an apparent head injury. Officer Avila requested medical assistance. While Officer Avila was tending to the hotel's general manager, defendant emerged from the hotel holding a knife in a sheath. Defendant was holding the

4

knife in his right hand toward his chest with his arm bent, and he appeared "upset, angry" as he walked toward Officer Avila. Officer Avila pulled his firearm and pointed it at defendant, instructing defendant in a loud voice several times to drop the knife. Officer Avila backed up and continued to instruct defendant to drop the knife in an effort to deescalate the situation; however, defendant continued walking toward Officer Avila, placing one hand on the knife and one hand on the sheath, which caused Officer Avila to feel threatened. Officer Avila testified that defendant also stated, " 'Fuck you. Shoot me.' " Officer Avila radioed for assistance, and once a second officer arrived, police tased defendant and subdued him. Officer Avila testified that defendant's actions delayed his investigation into the situation, in part because the tasing of defendant required Officer Avila to take defendant to the hospital.

The hotel general manager testified that he sustained a "mild concussion, a laceration over the right eye, and bruising, and numbness in the whole area." The emergency room physician who treated the general manager also testified in videorecorded testimony that the general manager sustained blunt head trauma, a black eye, a laceration, and a concussion, and experienced nausea and vomiting. The physician testified that the laceration required him to use glue to close the wound. The doctor testified that a concussion can be life-threatening; however, he also testified that the general manager demonstrated no issues with his speech, no nerve damage, no skull fracture, no bleeding in the brain, and no facial fractures, and that a CT scan revealed no other acute injuries.

Defendant testified in his defense. He disputed the accounts of the prosecution witnesses in several respects. For example, he testified that he did not tell the hotel front desk agent that he would assault any hotel employee who knocked on the room's door, instead stating that he complained about other hotel guests knocking on his door and running away. Concerning the charged offenses, defendant testified that when the hotel general manager approached, the general manager made a threatening motion with his

5

hands, and that defendant hit the general manager the first time because he thought the general manager would hit him. Defendant testified that he hit the general manager the second time before the general manager could hit him. Defendant testified that he went to his hotel room and retrieved his knife because he felt "outnumbered" by the general manager, the other two hotel employees, and another person who he said was in the area.[3] Defendant testified that he was pleased when he saw that police responded because he believed he did nothing wrong, and that he was "angry" and "hurt" when Officer Avila pointed his weapon at defendant, so he said, " 'Oh, you want to shoot me? Then go ahead and shoot me then.' " Defendant admitted that Officer Avila repeatedly instructed him to drop the knife and that he did not do so until he was tased, but he denied threatening the police. Defendant also asserted other matters, including that hotel workers told him at one point before the charged offenses that "they were going to slice my throat and . . . fuck my dead corpse," that hotel staff were trying to "murder" him, and that both the hotel and another hotel that defendant previously worked at were involved in "human trafficking."[4]

## III. DISCUSSION

### A. *Prosecutor's Comments Regarding Count 3*

Defendant was charged in count 3 with violating section 69, attempting by means of threat or violence to deter or prevent an executive officer from performing lawful duties. Defendant asserts that the prosecutor committed misconduct when he "argued to the jury that delusional beliefs and fear are not defenses to count 3." Defendant also

---

[3] The hotel's general manager and assistant general manager testified that they did not see this other person in the area.

[4] Defendant's partner, who did not witness defendant's assault on the hotel general manager or most of the situation with the police, also testified. She testified that she saw police "kicking [defendant's] feet and at one point stomping on his feet" and "stepping on his hand" after he was already subdued. The prosecution then called Officer Avila to testify about body camera footage that rebutted defendant's partner's testimony.

6

notes that the prosecutor moved in limine to exclude any allegations or claims that defendant suffered from mental illness on the grounds that such evidence was irrelevant because all the charged offenses were general intent crimes.  Defendant argues that taken together, the "prosecutor's misstatements of law regarding the requisite intent and defenses for count 3 absolved it from the obligation to overcome reasonable doubt on the element that [defendant] had the specific intent to deter or prevent the officer from performing his duty," and that this constituted misconduct regardless of whether the prosecutor made these statements in bad faith.  Defendant further argues that his trial counsel was ineffective in three different respects regarding this subject:  (1) his counsel "failed to correct the prosecutor during the in limine motion hearing when he told the court that count 3 is a general intent crime and that delusions and marijuana intoxication are therefore not viable defenses"; (2) his counsel "failed to correct the prosecutor when he argued to the jury that fear and delusional beliefs are not defenses to count 3"; and (3) his counsel "failed to present the defense that delusional beliefs and/or voluntary intoxication could create reasonable doubt for the specific intent to deter element" of count 3.

### 1.  Factual Background

The prosecutor filed a pretrial motion "to exclude any allegations or claims the defendant has a mental health condition that would legally justify a claim of self defense."  The motion asserted that at the time of the charged offenses, defendant "made facially delusional claims that the hotel staff were trying to 'murder' him for over a year and were having him followed so that they could murder him," and that he "also made the same allegations that the Police were going to murder him."  The motion asserted that "[u]nless substantial evidence is provided to support these allegations, these allegations are delusions, either due to voluntary intoxication or mental health."  The prosecutor's motion stated that "the charges alleged are general intent crimes," and that therefore if

7

defendant had an underlying mental health condition or was intoxicated to the point of suffering delusions, evidence of such a condition was not relevant at trial.

In a hearing on motions in limine, the trial court asked the prosecutor about this motion, and the prosecutor replied that the motion was "prophylactic" based on the prosecutor's experience in another case where a defendant's mental health issues were raised in an opening statement without providing evidence to support such issues. The prosecutor stated concerning the instant case: "And there were some statements, at least from the People's perspective, that seemed bizarre. And I didn't know if the defense was going to be taking an angle like this. So I'm just moving to prohibit any argument or statements regarding mental health evidence. It's not relevant, and I don't see a psychologist on the witness list." The trial court asked the prosecutor, "Well, it can be relevant if there's an intent issue, isn't it?" The prosecutor replied: "These are all general intent crimes. Even [Penal Code section] 69 is general intent. And in order -- so I'd have to go pull the Penal Code, but you can't use, unless it's [a not guilty by reason of insanity] trial, mental health claims to undercut a general intent." The trial court then asked defendant's trial counsel whether he anticipated raising such matters at trial, and trial counsel replied that he did not, so the trial court deferred ruling on the prosecutor's motion.

At trial, the prosecutor asked defendant in cross-examination whether he was "sober" on the day of the charged offenses. Defendant answered: "No. Because -- I'm trying to think. Because in the morning sometimes I go down there and I have a joint with my cigarette. So I'm trying to think did I have one that day. Not to my recollection, that I was intoxicated. But, no, I don't, no alcohol or no drugs, no." The prosecutor then followed up: "Clear headed, not having any, like, mental health issues that day?" Defendant responded: "No. Or any day."

In his closing argument, the prosecutor listed the three counts against defendant, and then discussed count 1, assault likely to cause great bodily injury. While discussing

count 1, the prosecutor stated that he just needed to show that defendant acted willfully in committing this offense, and that "I don't have to show any particular motive or intent." The prosecutor then stated the following: "Voluntary intoxication is not a defense. The defendant was unclear if he had smoked marijuana that day. It doesn't matter if he did. It's legal in California. No one cares. If he didn't, fine. If he did, it's not a defense. [¶] Delusional beliefs are not a defense in this case. There are types of cases where if someone's having a mental health episode, and because of that, are doing something, and they don't actually know it's wrong, there's a type of process for that. It's called a plea of not guilty by reason of insanity. That's not here. No one's alleging that. [¶] So if you think that he acted because of a delusional belief, that's not a defense to this." Later in his argument, the prosecutor listed the elements of the offense in count 3; he noted that he had to prove that "defendant [was] trying to prevent this officer from performing duties"; and he argued that evidence that defendant may have been afraid at the time of this charged offense was not a defense. After discussing the evidence supporting count 3, the prosecutor then discussed the lesser included offense of delaying a peace officer, stating: "I don't have to show any specific intent on this one. So I don't have to show he intended to delay the officers, just that it did."

The trial court instructed the jury concerning count 3 in accordance with CALCRIM No. 2651, including that when defendant acted, he intended to prevent or deter an executive officer from performing the officer's duties.

### 2. Legal Principles and Standard of Review

#### a. *Section 69 and Evidence Relevant to Formation of Specific Intent*

Section 69 makes it a crime to "attempt[], by means of any threat or violence, to deter or prevent an executive officer from performing any duty imposed upon the officer by law" or to "knowingly resist[], by the use of force or violence, the officer, in the performance of his or her duty . . . ." (*Id.*, subd. (a).) "Section 69 . . . proscribes two

9

different offenses. The first one is the specific intent offense of attempting by threat or violence to deter or prevent an executive officer from performing a duty. The second is a resisting arrest offense. [Citation.]" (*People v. Mackreth* (2020) 58 Cal.App.5th 317, 331, fn. 11.) "[A] number of courts have held that the first way of violating section 69 'is a specific intent crime, requiring proof of a specific intent to interfere with the executive officer's performance of his or her duties.' [Citations.]" (*People v. Atkins* (2019) 31 Cal.App.5th 963, 975.) "By its text, the second way of violating the statute requires that the prosecution prove that defendant 'knowingly resist[ed]' the officer by 'force or violence.' [Citation.] This 'resistance prong' of section 69 is a general intent crime that requires ' "only a knowledge that the facts exist which bring the act or omission within the provisions of this code." ' [Citation.]" (*Id.* at pp. 973–974.)

"Evidence of mental disease, mental defect, or mental disorder shall not be admitted to show or negate the capacity to form any mental state, including, but not limited to, purpose, intent, knowledge, premeditation, deliberation, or malice aforethought, with which the accused committed the act. Evidence of mental disease, mental defect, or mental disorder is admissible solely on the issue of whether or not the accused actually formed a required specific intent, premeditated, deliberated, or harbored malice aforethought, when a specific intent crime is charged." (§ 28, subd. (a).) "Evidence of defendant's mental condition is not admissible to prove the absence of general intent. [Citation.]" (*People v. Jefferson* (2004) 119 Cal.App.4th 508, 519.)

### b. *Prosecutorial Misconduct and Prosecutorial Error*

"Advocates are given significant leeway in discussing the legal and factual merits of a case during argument. [Citation.] However, 'it is improper for the prosecutor to misstate the law generally [citation], and particularly to attempt to absolve the prosecution from its . . . obligation to overcome reasonable doubt on all elements [citation].' [Citations.] To establish such error, bad faith on the prosecutor's part is not

10

required.  [Citation.]  '[T]he term prosecutorial "misconduct" is somewhat of a misnomer to the extent that it suggests a prosecutor must act with a culpable state of mind.  A more apt description of the transgression is prosecutorial error.'  [Citation.]"  (*People v. Centeno* (2014) 60 Cal.4th 659, 666–667 (*Centeno*).)  "When attacking the prosecutor's remarks to the jury, the defendant must show that, '[i]n the context of the whole argument and the instructions' [citation], there was 'a reasonable likelihood the jury understood or applied the complained-of comments in an improper or erroneous manner. [Citations.]  In conducting this inquiry, we "do not lightly infer" that the jury drew the most damaging rather than the least damaging meaning from the prosecutor's statements. [Citation.]'  [Citations.]"  (*Id.* at p. 667.)

### c.  *Forfeiture*

"[T]o preserve a claim of prosecutorial misconduct for appeal, ' " 'a criminal defendant must make a timely and specific objection and ask the trial court to admonish the jury to disregard the impropriety.' " [Citation.]  The lack of a timely objection and request for admonition will be excused only if either would have been futile or if an admonition would not have cured the harm.'  [Citation.]"  (*People v. Hoyt* (2020) 8 Cal.5th 892, 942–943 (*Hoyt*).)  " 'The primary purpose of the requirement that a defendant object at trial to argument constituting prosecutorial misconduct is to give the trial court an opportunity, through admonition of the jury, to correct any error and mitigate any prejudice.'  [Citation.]"  (*People v. Seumanu* (2015) 61 Cal.4th 1293, 1328 (*Seumanu*).)

### d.  *Ineffective Assistance of Counsel*

"In order to establish a claim of ineffective assistance of counsel, defendant bears the burden of demonstrating, first, that counsel's performance was deficient because it 'fell below an objective standard of reasonableness [¶] . . . under prevailing professional norms.'  [Citations.]  Unless a defendant establishes the contrary, we shall presume that 'counsel's performance fell within the wide range of professional competence and that

11

counsel's actions and inactions can be explained as a matter of sound trial strategy.' [Citation.] If the record 'sheds no light on why counsel acted or failed to act in the manner challenged,' an appellate claim of ineffective assistance of counsel must be rejected 'unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation.' [Citations.] If a defendant meets the burden of establishing that counsel's performance was deficient, he or she also must show that counsel's deficiencies resulted in prejudice, that is, a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' [Citation.]" (*People v. Ledesma* (2006) 39 Cal.4th 641, 745–746 (*Ledesma*).)

### 3. Analysis

Defendant did not object to any of the prosecutor's comments that he asserts on appeal constituted misconduct. He does not argue, let alone demonstrate, that any such objection would have been futile or that an admonition would not have cured the harm caused by the alleged misconduct. Thus, defendant has forfeited his claim that the prosecutor committed misconduct in his comments regarding the mental state necessary for count 3 and defenses that were or were not available for this charged offense.

Even if defendant did not forfeit this issue, we would conclude that the prosecutor did not commit misconduct in his statements regarding the effect of any mental health issues, delusional beliefs, or intoxication by defendant on count 3. Defendant argues that the prosecutor committed misconduct by stating both in motions practice and in closing argument that count 3 was a general intent crime and therefore evidence of defendant's mental health issues or intoxication was not relevant. As a preliminary matter, defendant's argument relies on the premise that he was charged with and convicted of the first component of section 69 (attempting to deter or prevent an executive officer from performing a duty imposed by law), a specific intent crime. The jury's verdict form reflected that defendant was convicted of "resisting an executive officer," the second type of activity prohibited by section 69 and a general intent crime. However, the second

amended information charged defendant with attempting to deter or prevent an executive officer from performing a duty imposed by law, and the trial court instructed the jury in accordance with CALCRIM No. 2651, which applies to this first type of activity proscribed by section 69.[5] The trial court did not instruct the jury concerning the second type of activity proscribed by section 69—resisting an executive officer—though the trial court did instruct the jury concerning the lesser included offense of resisting a peace officer (§ 148, subd. (a)(1).)[6] We therefore assume for purposes of this analysis that defendant was charged with and convicted of a specific intent crime for count 3.

---

[5] The trial court instructed the jury concerning count 3: "The defendant is charged in Count 3 with trying to prevent or deter an executive officer from performing that officer's duty, in violation of Penal Code Section 69. To prove that the defendant is guilty of this crime, the People must prove that, one, the defendant willfully and unlawfully used a threat of violence to try to prevent or deter an executive officer from performing the officer's lawful duty; [¶] Two, when the defendant acted, he intended to prevent or deter . . . the executive officer from performing the officer's lawful duty; [¶] Three, a reasonable listener in a similar situation with similar knowledge would interpret the threat in light of the context and surrounding circumstances as a serious expression of intent to commit an act of unlawful force or violence; [¶] And, four, when the defendant acted, he knew that the person was an executive officer. [¶] Someone commits an act willfully when he or she does it willingly or on purpose. An executive officer is a government official who must use his or her own discretion in performing his or her job duties. A police officer is an executive officer. [¶] A threat may be oral or written and may be implied by a pattern of conduct or combination of statements and conduct. Someone who intends that a statement be understood as a threat does not have to actually intend to carry out the threat, threatened act or intend to have someone else do so. [¶] A sworn member of the Salinas Police Department is a peace officer. The duty of an officer includes responding to calls for service, taking witness statements and conducting criminal investigations."

[6] For the lesser included offense, the trial court instructed the jury as follows: "Resisting a peace officer is a lesser included crime to resisting executive officer with threat. To prove that the defendant is guilty of this crime, the People must prove that, one, Anthony Avila was a police officer lawfully performing or attempting to perform his duties as a police officer; [¶] Two, the defendant willfully resisted, obstructed or delayed . . . Anthony Avila in the performance or attempted performance of those duties; [¶] And three, when the defendant acted, he knew or reasonably should have known that (continued)

13

Concerning the prosecutor's argument to the trial court in motions practice, defendant does not show how this argument prejudiced him. The trial court asked the prosecutor whether evidence of defendant's delusions could be relevant concerning the issue of defendant's intent, demonstrating an awareness that count 3 requires proof of defendant's intent to deter or prevent the officer from performing his duties. It was not until defense counsel informed the trial court that he did not intend to introduce evidence related to defendant's mental health issues or intoxication that the trial court deferred ruling on this motion. The trial court never ruled on the prosecutor's motion and it provided no indication that it was influenced by the prosecutor's assertion that section 69 is a general intent crime. Thus, defendant has not shown that any prejudicial prosecutorial misconduct occurred concerning the motion in limine.

Defendant's argument of prosecutorial misconduct concerning closing arguments is premised on his assertion that the prosecutor told the jury that evidence of defendant's delusional beliefs was not relevant to count 3. However, the prosecutor made no such statement. The prosecutor's comments regarding the lack of a defense concerning defendant's delusional beliefs came as the prosecutor discussed count 1 (§ 245, subd. (a)(4), a general intent crime), not count 3 (§ 69). The prosecutor did argue that "[d]elusional beliefs are not a defense *in this case*" (italics added), but this statement came when discussing count 1, not count 3, and soon after this statement, the prosecutor stated, "So if you think that he acted because of a delusional belief, that's not a defense to this." In context, the "this" the prosecutor referred to was count 1. When it came to count 3, the prosecutor correctly noted the elements of the offense, he specifically told

Anthony Avila was a police officer performing or attempting to perform his duties. [¶] Someone commits an act willfully when he or she does it willingly or on purpose. It is not required that he or she intend to break the law, hurt someone else or gain any advantage. A person who is employed as a police officer by the Salinas Police Department is a peace officer. [¶] The duties of an officer include responding to calls for service, taking witness statements and conducting criminal investigations."

14

the jury he needed to prove that defendant acted with the intent to deter or prevent the officer from performing his duties, and he made no reference to the impact of any issues regarding defendant's mental health or intoxication in discussing count 3, arguing only that evidence that defendant was afraid was not a defense to this count. The prosecutor also discussed the lesser included offense of delaying a peace officer, noting that unlike the charged offense, he did not have to show specific intent for the lesser included offense. The jury was correctly instructed regarding the elements of deterring or preventing an executive officer from performing his or her duties, and the trial court informed the jury that it should heed the court's instructions if counsel's arguments conflicted with the instructions. Therefore, defendant has not shown that there was " 'a reasonable likelihood the jury understood or applied the complained-of comments in an improper or erroneous manner. [Citations.]' " (*Centeno*, *supra*, 60 Cal.4th at p. 667.)

Because we conclude that the prosecutor did not commit misconduct in discussing the mental state needed for count 3 and defenses available for this charged offense in his closing argument, defendant has not shown that his trial counsel was ineffective by failing to object to the complained-of comments. In addition, the record demonstrates a tactical reason for not complaining about the prosecutor's comments, as trial counsel stated in motions practice that he did not intend to present evidence or make comment as to any mental health issues or intoxication defendant experienced, and then on the stand, defendant denied experiencing intoxication or mental health issues. Thus, counsel did not perform deficiently. Defendant argues that his counsel was ineffective for failing to present evidence of defendant's intoxication and/or mental health issues regarding count 3. However, defendant testified that he did not experience such issues at the time of the charged offenses. Thus, even if counsel was deficient in not raising this defense, it is not reasonably probable that any such defense would have resulted in a more favorable outcome at trial. (*Ledesma*, *supra*, 39 Cal.4th at p. 746.)

15

**B.** *Conditional Examination*

Defendant next asserts that he received ineffective assistance of counsel when his trial counsel: (1) stipulated to the conditional examination of the doctor who treated the victim; and (2) did not object to the playing of the recording of the conditional examination at trial. Defendant contends that the conditional examination was improper because the requirements in sections 1335 through 1345 for conditional examinations were not met, that the introduction of the conditional examination violated his Sixth Amendment right to confrontation, and that his defense counsel provided ineffective assistance of counsel by stipulating to the conditional examination and allowing its introduction at trial without a finding that the witness was unavailable.

### 1. Factual Background

On June 16, 2022, the defense requested a continuance of the trial scheduled for June 27, 2022, citing a medical emergency the defense attorney was experiencing that would make her unavailable for trial. The request noted that the prosecution did not oppose a continuance until July 25, 2022 to allow new defense counsel to prepare for trial.

On June 21, 2022, a new public defender appeared on behalf of defendant, with the defense attorney who requested the continuance also present. Defendant's new counsel stated that he was requesting a continuance until July 25, 2022 because he was recently appointed to the case and needed to prepare for trial. The prosecutor responded as follows: "That's fine, Your Honor. And I agree [to] the date of 7-25 on the condition that if ultimately a medical-fact witness is unavailable out of town, that I could have a conditional exam like the week prior. And the defense did not have an objection to that." The trial court asked the defense counsel who had earlier requested the continuance the following: "[I]t's my understanding that we're setting the trial on this date. But if a particular individual cannot make it, that you'll -- you are stipulating that that person can be examined conditionally under oath. Is that correct?" Counsel agreed. As a result, the

16

trial court granted the motion for continuance, setting a new trial date of July 25, 2022. The trial date was later moved to August 8 and then to August 29, 2022 for unrelated reasons.

On July 12, 2022, the parties appeared before the trial court and scheduled a conditional examination. In this session, the prosecutor stated that the conditional examination "would be recorded, and a recording would be played at trial by stipulation of the parties." Defendant's new counsel did not object to this. The conditional examination of Dr. Valerie Vigil took place on July 21, 2022. Dr. Vigil testified concerning her treatment of the hotel general manager following the charged offenses and the extent of the general manager's injuries, and defendant's counsel cross-examined Dr. Vigil on these matters. Then, in opening statements at defendant's trial, the prosecutor stated: "You're going to have a video recording of Dr. Valerie Vigil. She was the doctor that diagnosed [the hotel general manager] with concussion. We have been trying to get this to go to trial for a handful of weeks. And the doctor has a difficult schedule. So her testimony was prerecorded in the event she wasn't available. So we didn't have to keep delaying the trial. So she testified under oath in one of the courtrooms in this building. You're just going to see that video recorded testimony." A recording of this conditional examination was played for the jury at trial, with the prosecutor representing that the recording was "played by stipulation of the parties, live testimony."

### 2. Legal Principles and Standard of Review

Section 1335 provides in relevant part: "If a defendant has been charged with a public offense triable in a court, he or she in all cases, and the people in cases other than those for which the punishment may be death, may, if the defendant has been fully informed of his or her right to counsel as provided by law, have witnesses examined conditionally in his or her or their behalf, as prescribed in this chapter." (*Id.*, subd. (a).) Section 1336 states in relevant part: "When a material witness for the defendant, or for

17

the people, is about to leave the state, or is so sick or infirm as to afford reasonable grounds for apprehension that he or she will be unable to attend the trial, or is a person 65 years of age or older, or a dependent adult, the defendant or the people may apply for an order that the witness be examined conditionally." (*Id.*, subd. (a).) Section 1337 states that an application for a conditional examination shall be made by affidavit, which shall include either that the witness is a victim or material witness in a domestic violence or human trafficking case who has been or is being intimidated or threatened, or that the following is true: "The witness is about to leave the state, or is so sick or infirm as to afford reasonable grounds for apprehending that he or she will not be able to attend the trial, or is a person 65 years of age or older, or a dependent adult, or that the life of the witness is in jeopardy." (*Id.*, subd. (d)(1).) "If the court or judge is satisfied that the examination of the witness is necessary, an order must be made that the witness be examined conditionally, at a specified time and place, and before a magistrate designated therein." (§ 1339.) "The defendant has the right to be present in person and with counsel at the examination . . . ." (§ 1340, subd. (a).) Section 1343 provides that testimony at a conditional examination shall be reduced to writing and may be videorecorded. "[I]f the examination was video-recorded, that video-recording may be shown by either party at the trial if the court finds that the witness is unavailable as a witness within the meaning of Section 240 of the Evidence Code." (§ 1345.) A witness is unavailable under Evidence Code section 240 when, among other situations, the witness is "[a]bsent from the hearing and the proponent of his or her statement has exercised reasonable diligence but has been unable to procure his or her attendance by the court's process." (*Id.*, subd. (a)(5).)

"Ordinarily, an appellate court will not consider a claim of error if an objection could have been, but was not, made in the lower court. [Citation.] The reason for this rule is that '[i]t is both unfair and inefficient to permit a claim of error on appeal that, if timely brought to the attention of the trial court, could have been easily corrected or

18

avoided.' [Citations.] '[T]he forfeiture rule ensures that the opposing party is given an opportunity to address the objection, and it prevents a party from engaging in gamesmanship by choosing not to object, awaiting the outcome, and then claiming error.' [Citation.]" (*People v. French* (2008) 43 Cal.4th 36, 46.) However, the forfeiture rule does not apply when: "(1) the appellate claim is the kind that required no trial court action to preserve it, or (2) the new arguments do not invoke facts or legal standards different from those the trial court was asked to apply, but merely assert that the trial court's act or omission, in addition to being wrong for reasons actually presented to that court, had the legal consequence of violating the United States and California Constitutions." (*People v. Contreras* (2013) 58 Cal.4th 123, 139, fn. 17.)

A claim that a conditional examination was erroneously taken may be forfeited by failure to object to the conditional examination at trial. (See *People v. Williams* (2008) 43 Cal.4th 584, 625 [claim that prosecution failed to establish it employed reasonable diligence to procure witness's presence at trial within the meaning of Evidence Code section 240, subdivision (a)(5) was not raised in the trial court and was therefore forfeited]; *People v. McCoy* (2013) 215 Cal.App.4th 1510, 1524 [failure to object to camera setup during conditional examination forfeited the issue on appeal]; *People v. Mays* (2009) 174 Cal.App.4th 156, 171, fn. 9 [defendant forfeited argument that the conditions for a conditional examination were not met by failing to raise it in the trial court].) A defendant also generally waives his or her right to claim error under the confrontation clause by failing to object in the trial court. (See *People v. Redd* (2010) 48 Cal.4th 691, 730 [defendant's assertion that admission of out-of-court identifications violated his Sixth Amendment right to confront witnesses was forfeited by the failure to raise an objection below]; *People v. Lewis and Oliver* (2006) 39 Cal.4th 970, 1028, fn. 19 ["We reiterate that defendants have forfeited this confrontation clause claim by failing to raise it below. [Citations.]"]; *People v. Alvarez* (1996) 14 Cal.4th 155, 186 ["Defendant

19

has not preserved his claim for review. . . . There was neither a 'specific' nor 'timely' objection below predicated on the Sixth Amendment's confrontation clause."].)

### 3. Analysis

Defendant forfeited any claim that the trial court erred in approving the conditional examination and in permitting the recording of the conditional examination to be played at trial. Defense counsel agreed to the conditional examination of Dr. Vigil, and the prosecutor stated that the recording of the conditional examination "would be played at trial by stipulation of the parties." Defense counsel never objected to either the taking of the conditional examination or to playing the recording.

Defendant contends that the failure to object was the result of ineffective assistance by his trial counsel. We do not agree. The record does not disclose that there could be no satisfactory explanation for trial counsel's failure to object. As the Attorney General notes, defendant's counsel may have been motivated by a desire to minimize the impact of Dr. Vigil's testimony by avoiding calling Dr. Vigil as a live witness to testify to the injuries the hotel general manager sustained from defendant. Trial counsel was able to effectively cross-examine Dr. Vigil in the conditional examination about the limits of the victim's injuries, and trial counsel may have believed that playing the recording of this conditional examination was not detrimental to the defense's case, particularly because the defense's case focused on a claim of self-defense rather than contesting the severity of the victim's injuries. Alternatively, defense counsel may have been motivated by a desire to avoid further delays in bringing defendant's case to trial. As the prosecutor noted in his opening statement, the trial date changed several times, and given Dr. Vigil's "difficult schedule," defense counsel may have believed that playing the recording of the conditional examination would avoid the possibility of further trial delays, which may not have been in defendant's interest. In addition, the record does not demonstrate whether Dr. Vigil was unavailable within the meaning of Evidence Code section 240, which would have permitted the recording of conditional examination to be played at trial under

20

section 1345. Defendant notes that a sidebar took place before the conditional examination was played, and he asserts that his trial counsel was ineffective for failing to ensure the substance of the sidebar was captured in the record "[i]f the unreported sidebar would have shed light on whether trial counsel objected to the introduction of the conditional examination or otherwise had a 'tactical purpose' for agreeing to its introduction . . . ." However, there is no reason to believe trial counsel objected at this sidebar or that any reason for not objecting was discussed in the sidebar, when trial counsel expressed no concern about the conditional examination at any other point.[7] Because the record does not disclose that there could be no satisfactory explanation for trial counsel's failure to object, defendant has not established that he received ineffective assistance of counsel. (*Ledesma*, *supra*, 39 Cal.4th at p. 746.)

Moreover, defendant has not established that he was prejudiced by any deficient performance by his counsel. As a starting matter, defendant does not articulate how the taking of the conditional examination—as opposed to the playing of the examination's recording at trial—prejudiced him. Defendant also does not establish how the playing of the conditional examination recording was any more detrimental to his case than calling Dr. Vigil as a live witness would have been. Defendant has not established that he was unable to cross-examine Dr. Vigil about any matter in the conditional examination; rather, the record indicates that trial counsel effectively cross-examined Dr. Vigil about the limits of the victim's injuries. In addition, the hotel manager also testified about his injuries, photos of the victim bleeding and of the victim's black eye were introduced at trial, and the extent of the victim's injuries was not a contested matter at trial. Defendant's argument that he was prejudiced by the playing of the conditional

---

[7] To the extent that the playing of the conditional examination's recording may have been discussed at the sidebar, appellate defense counsel could seek to use a settled statement as the record of these proceedings. (See Cal. Rules of Court, rule 8.346; *People v. Taylor* (2010) 48 Cal.4th 574, 660.)

21

examination recording rests in part on his assertion that the prosecutor misstated the legal standards of great bodily injury and serious bodily injury, arguments we reject below. Thus, defendant has not demonstrated "a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' [Citation.]"  (*Ledesma*, *supra*, 39 Cal.4th at p. 746.)

### C. *Prosecutor's Comments About Great Bodily Injury and Serious Bodily Injury*

Defendant next argues that the prosecutor committed prosecutorial misconduct in various comments regarding the legal standards for great bodily injury and serious bodily as specified in the charged offenses and the associated allegations.  Noting that his trial counsel did not object to any of these comments, defendant asserts that this claim is not forfeited because the error affected his substantial rights and resulted in an unauthorized sentence.  He argues that the prosecutor's comments, in combination with an asserted erroneous instruction from the trial court, constituted impermissible mandatory presumption errors in violation of his rights under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, and that the erroneous comments from the prosecutor and the trial court's erroneous instruction prejudiced him.  If this court finds defendant forfeited this issue by failing to object, defendant contends that he received ineffective assistance of counsel.

#### 1. Factual Background

Count 1 alleged a violation of section 245, subdivision (a)(4), assault by means of force likely to produce great bodily injury.  This count included an enhancement allegation under section 12022.7, subdivision (a) that defendant personally inflicted great bodily injury upon the victim.  Count 2 alleged a violation of section 243, subdivision (d), battery causing serious bodily injury.  This count included an allegation that defendant "personally inflicted serious bodily injury" on the victim within the meaning of section 667.5, subdivision (c)(8) and section 12022.7, subdivision (a).

In the prosecutor's pretrial motions in limine, the prosecution added a section titled "Other Relevant Legal Principles," which included a subheading titled "Great Bodily Injury and Serious Bodily Injury are Synonymous." This submission asserted that the two terms " 'have substantially the same meaning,' " and that therefore "[t]he People anticipate they will argue [serious bodily injury] and [great bodily injury] are essentially synonymous and are providing case law consistent with that to avoid any issues during argument." In a motions hearing, the trial court briefly noted this issue was raised in the prosecution's pretrial submission, but neither the trial court nor the parties commented on it.

In accordance with the prosecutor's pretrial submission, the prosecutor stated as follows in his closing argument: "Great bodily injury is injury that means significant or substantial physical injury. It is an injury that is greater than minor or moderate harm. That's all the definition they give you. That's very open ended, I will say. Because we have serious bodily injury charge, these terms are typically deemed synonymous, even though the legislature gives a very specific definition for one and a very vague definition for the other. [¶] Great bodily injury, serious bodily injury are essentially the same thing. Just defined different ways. And serious bodily injury is typically defined as any one of these or something else significant. Key ones in this one, concussion or wound requiring extensive suturing or surgery. [¶] There are injuries outside of this list. Like if someone just is bruised head to toe, that could still be great bodily injury. So it's an open ended list. But generally a way to think of it is it's something more than minor or moderate harm. You know, you slap yourself and you get a red mark for 30 minutes. That's minor harm. A bruise or two, lasts for a week, moderate harm. You know, a cut that can heal with a Band-Aid, moderate harm. If you need to go to a hospital and requires treatment from a doctor, that's probably more than minor or moderate harm."

At that point, the trial court interrupted the prosecutor's argument, stating as follows: "The Court's going to sustain its own objection. That misstates the law. Ladies

23

and gentlemen, the instructions on serious bodily injury and great bodily harm are provided to you. Please follow those instructions." The prosecutor then stated: "You can decide for yourself whether this was something that was minor or moderate harm. Before we discuss self-defense, I'm going to talk about Count 2." The trial court again interjected, stating: "The Court is going to again correct counsel. It is not minor or moderate harm. It has to be greater than minor and moderate harm." The prosecutor agreed, stating, "Yes. If I stated it otherwise, I apologize."

Shortly thereafter, in discussing count 2, the prosecutor recited the instruction concerning the definition of serious bodily injury. The prosecutor then argued as follows: "So first discussing was this great bodily injury, was this serious bodily injury? You know, from a serious bodily injury, the instruction provided you is -- an example is concussion. What was [the victim] diagnosed with? A concussion. Not just a head injury, a concussion, which as you heard from the doctor is separate. [¶] So it's not really contestable that this is serious bodily injury unless you don't believe the doctor's diagnosis. Which there was nothing contradicting or undercutting that doctor's diagnosis. [¶] The laceration, that in and of itself, it required medical intervention. Since the decades later that this statute and instruction was written, now you can – there's ways you can do it with glue or you can do it [with] sutures. Either way it required intervention. You can decide if you think that by itself qualifies as serious bodily injury. [¶] But when you're evaluating if a person or a victim suffers serious bodily injury, you don't do one at a time. You don't say, okay, was this one by itself? No. Okay, then we ignore it. Okay. Was this one by itself? No. Then we ignore it. You look at the totality. [¶] Were all the injuries, when you bring them together, more than minor or moderate harm? Or in case of serious bodily injury, you know, the definition provided in that instruction. And what do we have? We have bruising of the eye that lasted a month. Lot longer than your typical bruise. This laceration that required medical intervention left a scar. The concussion. He also testified how his jaw was sore because that's where he got

hit the first time, and it was hard to open for weeks. [¶] And then he also had this numbness to his face for weeks. Still not fully gone. Where the doctor said it's either a brain injury, swelling in his face -- and you can see by the photo the day after the swelling is gone, or it's nerve damage. You can see the process of elimination yourself and realize he had nerve damage in his face. [¶] All of those together, that minor or moderate harm, absolutely not. This is per se serious bodily injury, absolutely great bodily injury. It's not really contestable."

Defendant's trial counsel did not object to the prosecutor's argument. Trial counsel's closing argument did not discuss whether the prosecution proved great bodily injury or serious bodily injury, instead focusing on the claim that defendant acted in self-defense and explaining defendant's perspective in the encounter with police.

The trial court instructed the jury concerning the statutory definitions of the terms great bodily injury and serious bodily injury.

### 2. Legal Principles and Standard of Review

Section 245, subdivision (a)(4) provides penalties for "[a]ny person who commits an assault upon the person of another by any means of force likely to produce great bodily injury . . . ." Section 667.5, subdivision (c) provides that certain crimes are considered " 'violent felon[ies]' " for sentencing purposes, including "[a]ny felony in which the defendant inflicts great bodily injury on a person other than an accomplice," when the felony has been charged under listed Penal Code provisions including section 12022.7. (§ 667.5, subd. (c)(8).) Section 12022.7, subdivision (a) states: "Any person who personally inflicts great bodily injury on any person other than an accomplice in the commission of a felony or attempted felony shall be punished by an additional and consecutive term of imprisonment in the state prison for three years." Section 12022.7 defines great bodily injury as "a significant or substantial physical injury." (*Id.*, subd. (f).)

25

Section 243, subdivision (d) provides penalties "[w]hen a battery is committed against any person and serious bodily injury is inflicted on the person . . . ." The statute defines serious bodily injury as "a serious impairment of physical condition, including, but not limited to, the following: loss of consciousness; concussion; bone fracture; protracted loss or impairment of function of any bodily member or organ; a wound requiring extensive suturing; and serious disfigurement." (*Id.*, subd. (f)(4).)

"Great bodily injury and serious bodily injury are similar terms; we have more than once called them ' "essentially equivalent." ' [Citations.] But we have also acknowledged that 'there are some differences in the statutory definitions.' [Citation.] Notwithstanding their substantial overlap, 'the terms in fact "have separate and distinct statutory definitions." ' [Citations.] That much is apparent from the Penal Code's language: ' "[T]he statutory definition of great bodily injury does not include a list of qualifying injuries" ' like the statutory definition of serious bodily injury does. [Citation.] For that reason, we have held that when great bodily injury is an element of an offense, a jury instruction that the crime requires serious bodily injury is erroneous. [Citation.]" (*In re Cabrera* (2023) 14 Cal.5th 476, 484 (*Cabrera*).) "Consistent with the generality of the definition of great bodily injury, we have declined invitations in the past to decide whether a particular type of injury amounts to great bodily injury as a matter of law. [Citation.] What meets the statutory standard is a factual question for the jury. [Citations.] There is a ' " 'fine line' " ' between injuries that qualify as great bodily injury and those ' " 'that do[] not quite meet the description,' " ' and '[w]here to draw that line is for the jury to decide.' [Citation.] For instance, juries may evaluate a broken bone 'along a continuum from a small hairline fracture, needing no medical intervention, to the compound fracture of a major bone, requiring surgical repair.' [Citation.] It is the jury's responsibility to determine where along that continuum it believes the harm becomes a ' "significant or substantial physical injury" ' rather than a ' "moderate" or "minor" ' one. [Citations.]" (*Id.* at pp. 484–485.)

26

A defendant must object to alleged prosecutorial misconduct to preserve the issue for appeal, unless the objection would have been futile or an admonition would not have cured the harm. (*Hoyt*, *supra*, 8 Cal.5th at pp. 942–943.)

### 3. Analysis

Defendant's trial counsel did not object to any of the prosecutor's comments listed above. As a result, defendant has forfeited this issue. Defendant asserts that forfeiture should not apply because the error affected his substantial rights and resulted in an unauthorized sentence, but his arguments in this regard are not persuasive. Defendant correctly notes that under section 1259, a reviewing court "may" review a question of law "which affected the substantial rights of the defendant." Defendant cites *People v. Medellin* (2020) 45 Cal.App.5th 519 (*Medellin*) to support his argument that under section 1259, forfeiture should not apply here. However, *Medellin* simply stated in a footnote that it would not apply forfeiture to a claim of prosecutorial misconduct under section 1259, not that a reviewing court *must* consider the merits of a claim of prosecutorial misconduct despite the lack of an objection from the defendant. (*Medellin*, *supra*, at p. 530, fn. 7.) Appellate courts routinely apply the forfeiture rule where a defendant has not objected at trial to an instance of alleged prosecutorial misconduct. (See, e.g., *Hoyt*, *supra*, 8 Cal.5th at p. 944; *People v. Daveggio and Michaud* (2018) 4 Cal.5th 790, 858; *Seumanu*, *supra*, 61 Cal.4th at pp. 1328–1329; *People v. Panah* (2005) 35 Cal.4th 395, 463; *People v. Lima* (2022) 80 Cal.App.5th 468, 478–479; *People v. Dowdell* (2014) 227 Cal.App.4th 1388, 1408.) Defendant does not argue that an objection would have been futile or would not have cured the harm, and the trial court's sua sponte sustained objection to portions of the prosecutor's argument demonstrate that the trial court was willing to correct any misstatement of the law by the prosecutor had defendant objected. While *Cabrera* was decided after defendant's trial, *Cabrera* merely confirmed what the California Supreme Court had already acknowledged: that great bodily injury and serious bodily injury have distinct statutory definitions. (*Cabrera*,

*supra*, 14 Cal.5th at p. 484; see also *People v. Santana* (2013) 56 Cal.4th 999, 1008–1009 [the terms great bodily injury and serious bodily injury "in fact 'have separate and distinct statutory definitions' " and "[t]his distinction may make a difference when evaluating jury instructions that provide different definitions for the two terms. [Citation.]"; *People v. Knoller* (2007) 41 Cal.4th 139, 143, fn. 2 [noting that "there are some differences in the statutory definitions" of great bodily injury and serious bodily injury].) Thus, defendant has shown no reason why forfeiture should not apply, and defendant has forfeited any claim that the prosecutor committed misconduct by misstating the legal standard for great bodily injury or serious bodily injury.

Defendant argues that if his claims of prosecutorial misconduct are considered forfeited, then he received ineffective assistance from his trial counsel. We conclude that defendant has not established he received ineffective assistance of counsel. First, several of the complained-of statements by the prosecutor do not clearly misstate the legal standards for great bodily injury and serious bodily injury. For example, much of the prosecutor's argument on the subject simply encouraged the jury to consider the injuries the hotel's general manager sustained and to consider the totality of the circumstances in determining whether these injuries amounted to great bodily injury or serious bodily injury. Defendant argues that the prosecutor committed misconduct when he argued that the victim's injuries are "per se serious bodily injury, absolutely great bodily injury," because the jury is charged with determining whether an injury meets these legal standards on a case by case basis. However, a fair reading of the prosecutor's entire arguments reveals that the prosecutor was not arguing that the jury was required to find great bodily injury or serious bodily injury occurred simply because the victim suffered a given medical condition. Instead, the prosecutor was asserting that the burden of demonstrating that the victim's injuries constituted great bodily injury and serious bodily injury was met. "[A]ssertively arguing fine points of evidence will seldom constitute misconduct . . . ." (*People v. Armstrong* (2019) 6 Cal.5th 735, 796.) "Advocates are

28

given significant leeway in discussing the legal and factual merits of a case during argument. [Citation.]" (*Centeno*, *supra*, 60 Cal.4th at p. 666.) The prosecutor's statement that the victim's injuries constituted great bodily injury and serious bodily injury amount to zealous advocacy when read in context, not misstatements of the law.

Moreover, the record does not affirmatively disclose that trial counsel had no possible rational tactical purpose for not objecting to the prosecutor's statements in closing arguments. As discussed above, the defense's case focused on asserting self-defense, not contesting that the victim's injuries amounted to great bodily injury or serious bodily injury. Particularly given the nature of defendant's attack on the victim and the victim's numerous and significant injuries, trial counsel reasonably might have elected not to contest that the injuries met the standards of the charged offenses. Therefore, trial counsel may have decided not to object to the prosecutor's argument, which might have served only to call the jury's attention to the severity of the injuries defendant inflicted. Particularly where many of the alleged misstatements of the law by the prosecutor were not clear and where the trial court already corrected the prosecutor at points, trial counsel might reasonably have believed that further objecting would not serve defendant's interest. Because the record does not disclose that there could be no satisfactory explanation for defense counsel's failure to object, defendant has not established that he received ineffective assistance of counsel. (*Ledesma*, *supra*, 39 Cal.4th at p. 746.)

In addition, even if defendant's trial counsel performed deficiently in not objecting to some or all of the prosecutor's arguments concerning the definition of great bodily injury or serious bodily injury, defendant has not demonstrated that he was prejudiced from any deficient performance. Defendant does not assert that the trial court erred in instructing the jury concerning the definitions of the two terms, and defendant's claim that the trial court erred in instructing the jury that the allegation associated with count 2 required serious bodily injury instead of great bodily injury is addressed in the next issue

29

below. The trial court instructed the jury that it should heed the court's instructions if counsels' arguments conflicted with the instructions. When the trial court sustained its own objection to the prosecutor's argument, it again reminded the jury that it should follow the trial court's instructions regarding the definitions of great bodily injury and serious bodily injury. Because the trial court did not err in instructing the jury concerning the definitions of great bodily injury and serious bodily injury, and because "jurors are presumed to understand and accept the court's instructions" (*People v. Erskine* (2019) 7 Cal.5th 279, 301), defendant has not established that any error by the prosecutor raised a reasonable probability that the jury was affected by the prosecutor's alleged misstatements of the law. Moreover, the evidence that the victim sustained great bodily injury and serious injury was strong, as the victim sustained blunt head trauma, a concussion, a laceration that required medical intervention to close, and a black eye, and experienced nausea and vomiting along with persisting numbness. Thus, defendant has not demonstrated "a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' [Citation.]" (*Ledesma*, *supra*, 39 Cal.4th at p. 746.)

### D. *Trial Court's Instruction Regarding Count 2 (Section 243, Subdivision (d), Battery Causing Serious Bodily Injury) Factual Allegation*

Defendant next asserts that the trial court erred in instructing the jury concerning the allegation associated with count 2. He argues that the trial court was required to instruct the jury that it must find defendant inflicted great bodily injury to find this allegation true, not serious bodily injury as the trial court instructed. While defendant did not object to the instruction at trial, he contends on appeal that this issue is not forfeited because forfeiture does not apply when the trial court provides an incorrect statement of the law. The Attorney General concedes that the trial court's instruction was erroneous and does not argue that forfeiture applies, but instead asserts that defendant is not entitled to relief on this issue because he was not prejudiced by the error.

### 1. Factual Background

The second amended information contained an allegation related to count 2 that defendant "personally inflicted serious bodily injury" on the victim within the meaning of section 667.5, subdivision (c)(8) and section 12022.7, subdivision (a). The trial court instructed the jury concerning this allegation as follows: "If you find the defendant guilty of the crime charged in Count 2, you must then decide whether the People have proved the additional allegation that the defendant personally inflicted serious bodily injury on [the victim] in the commission of that crime. [¶] A serious bodily injury means a serious impairment of physical condition. Such an injury may include, but is not limited to, loss of consciousness, concussion, bone fracture, protracted loss or impairment of function of any bodily member or organ, a wound requiring extensive surgery, and -- suturing, and serious disfigurement."

### 2. Legal Principles and Standard of Review

As discussed in the issue immediately above, section 667.5, subdivision (c)(8) provides that certain crimes are considered violent felonies for sentencing purposes, including "[a]ny felony in which the defendant inflicts great bodily injury on a person other than an accomplice," when the felony has been charged under listed Penal Code provisions including section 12022.7. Section 12022.7, subdivision (a) states: "Any person who personally inflicts great bodily injury on any person other than an accomplice in the commission of a felony or attempted felony shall be punished by an additional and consecutive term of imprisonment in the state prison for three years."

### 3. Analysis

We consider the merits of this issue despite the lack of an objection at trial because the forfeiture rule "does not apply when, as here, the trial court gives an instruction that is an incorrect statement of the law. [Citations.]" (*People v. Hudson* (2006) 38 Cal.4th 1002, 1012.) Although the second amended information alleged that defendant personally inflicted serious bodily injury on the victim, the sections this

allegation referenced—section 667.5, subdivision (c)(8) and section 12022.7, subdivision (a)—both require proof of great bodily injury. Therefore, we accept the Attorney General's concession that the trial court erred in instructing the jury concerning the serious bodily injury standard for the allegation associated with count 2 instead of instructing the jury that proof of great bodily injury was required.

The parties agree that in determining whether this error prejudiced defendant, we must determine whether it is clear beyond a reasonable doubt that the jury would have reached the same finding on this allegation absent the error. Utilizing this standard, we conclude that defendant was not prejudiced by the instructional error. The second amended information also alleged an enhancement in connection with count 1 that defendant personally inflicted great bodily injury upon the victim within the meaning of section 12022.7, subdivision (a). The trial court correctly instructed the jury concerning the great bodily injury definition in connection with this allegation. The jury found the great bodily injury enhancement true with respect to count 1. Both the enhancement concerning count 1 and the allegation concerning count 2 involved the same conduct by defendant. As the prosecutor stated in his closing argument, count 2 involved "a different legal theory for the same conduct, almost the same conduct" as count 1. We therefore conclude that it is clear beyond a reasonable doubt that the trial court's instructional error was harmless, as the jury's finding regarding the enhancement for count 1 demonstrates the jury would have found the allegation for count 2 true had it been instructed concerning the great bodily injury standard.

E. *Sufficiency of Evidence Regarding Count 2 Factual Allegation*

Defendant next argues that insufficient evidence supports the jury's true finding on the allegation associated with count 2 because under section 12022.7, subdivision (g) a great bodily injury enhancement cannot be imposed when infliction of great bodily injury is an element of the offense. Because count 2 required proof of infliction of great bodily injury, defendant argues that the allegation must be stricken. The Attorney

General responds that the allegation associated with count 2 was a "factual allegation," not an "enhancement," and thus section 12022.7, subdivision (g) does not apply.

### 1. Factual Background

As noted in the issue immediately above, the second amended information contained an allegation related to count 2 that defendant "personally inflicted serious bodily injury" on the victim within the meaning of section 667.5, subdivision (c)(8) and section 12022.7, subdivision (a). The second amended information referred to this allegation as a "Factual allegation," not an enhancement, and it stated: "NOTICE: The above offense is a serious felony within the meaning of Penal Code Section 1192.7(c) and a violent felony within the meaning of Penal Code Section 667.5(c)." The prosecution's pretrial brief also referred to this allegation as a "Factual Allegation," and unlike the great bodily injury enhancement for count 1, the prosecution's trial brief listed no possible term of imprisonment next to this allegation. The prosecution's trial brief later stated that defendant was charged with a "Penal Code 243(d) violation with a 12022.7 factual allegation for [p]urposes of Penal Code [section] 1192.7, not for the purposes of sentencing enhancements." A proposed verdict form for this allegation attached to the prosecution's pretrial brief also captioned this allegation as: "Factual Allegation to Count 2."

As trial began and the trial court reviewed the charges with the parties, the prosecution stated concerning count 2: "And the 243(d) does have just a factual allegation that he personally inflicted the [serious bodily injury]." The trial court responded: "So in either case should the defendant be convicted of either the 243(d) or the 245(a)(4) [count 1], with great bodily injury, that would result in a serious and violent felony and, as such, a strike under the California Three Strikes Law." The prosecutor replied affirmatively. In closing arguments, the prosecutor did not discuss the allegation associated with count 2 in detail. At one point, the prosecutor referred to the allegations for both counts 1 and 2 as "enhancements," then stating: "So this is just a factual

33

allegation that you finding that, yes, it was this defendant that actually inflicted these injuries, not one of -- not a coconspirator or buddy." At another point in closing, the prosecutor stated that count 2 included "a factual allegation the defendant is the one that personally inflicted the serious bodily injury." The jury announced its true finding as to the "factual allegation to Count 2," and the jury's verdict form for this allegation was titled "Factual Allegation to Count 2."

After trial, defendant moved to dismiss either the count 1 enhancement or the allegation associated with count 2. Defendant brought this motion under section 1385 "on the ground that the interests of justice will best be served by striking the enhancement or the punishment provided by the great bodily injury enhancement." In making this argument, defendant's motion briefly asserted that because he was convicted in count 2 of violating section 243, subdivision (d), he could not be convicted of the allegation under section 12022.7, subdivision (g) because count 2 contained an element of infliction of great bodily injury. At a hearing on the motion, defense counsel did not mention the section 12022.7, subdivision (g) issue, instead focusing on the argument that dismissing the count 1 enhancement was in the interest of justice. The trial court denied the motion, finding under section 1385 that dismissing count 1's enhancement was not in the interest of justice.

## 2. Legal Principles and Standard of Review

Section 12022.7, subdivisions (a) through (d) each provide for a sentence enhancement for a defendant who personally inflicts great bodily injury under specified circumstances. Section 12022.7, subdivision (g) states that section 12022.7, subdivisions (a) through (d) "shall not apply if infliction of great bodily injury is an element of the offense." Appellate courts "have long construed Penal Code section 12022,7, subdivision (g)'s bar on imposing the great bodily injury enhancement when 'infliction of great bodily injury is an element of the offense' to mean that the enhancement may not be imposed where serious bodily injury is an element of the

34

underlying offense. [Citations.]" (*Cabrera*, *supra*, 14 Cal.5th at p. 490.) For example, in *People v. Hawkins* (1993) 15 Cal.App.4th 1373, 1374–1376, the Court of Appeal held that battery causing serious bodily injury under section 243, subdivision (d) contains an element of infliction of great bodily injury and therefore that it was error to impose a consecutive three-year enhancement for intentional infliction of great bodily injury under section 12022.7. (See also *People v. Otterstein* (1987) 189 Cal.App.3d 1548, 1550 ["Ordinarily, the great bodily injury enhancement may not be applied to a term imposed for violation of Penal Code section 243, subdivision (d)"; however, the defendant waived his objection to imposition of the enhancement by bargaining for a lesser term that included the enhancement].)

However, this court has affirmed a trial court's refusal to strike a section 12022.7, subdivision (a) great bodily injury allegation in connection with the defendant's section 243, subdivision (d) conviction where the allegation did not amount to an enhancement. (*In re Jose H.* (2000) 77 Cal.App.4th 1090, 1096 (*Jose H.*).) This court reasoned that the defendant "did not receive a separate sentence for the great bodily enhancement to his charge of battery with serious bodily injury," noting that the prosecutor stated that the great bodily injury allegation was included " 'to qualify and perfect the offense for treatment as a "strike" in the future, should the ward continue to commit felony criminal offenses.' " (*Ibid.*) This court in *Jose H.* determined that the trial court properly denied the defendant's motion to strike the allegation because the defendant "was not punished twice for the battery and the enhancement." (*Ibid.*)

Battery with serious bodily injury requires proof that "battery is committed against any person and serious bodily injury is inflicted on the person." (§ 243, subd. (d).) Courts have held that for purposes of section 12022.7, subdivision (g), the terms "serious bodily injury" and "great bodily injury" have substantially the same meaning and thus battery with serious bodily injury contains an element of infliction of great bodily injury. (See *People v. Johnson* (2016) 244 Cal.App.4th 384, 391 ["California courts have long

35

held that 'serious bodily injury,' as used in section 243, and 'great bodily injury,' as used in section 12022.7, are essentially equivalent. [Citations.]".) In *Cabrera*, our Supreme Court noted a Court of Appeal decision that held that "serious bodily injury" under section 243, subdivision (d) has substantially the same meaning as "great bodily injury" for purposes of section 12022.7, subdivision (g), without deciding whether this Court of Appeal's decision remained valid after *Cabrera*'s holding that great bodily injury and serious bodily injury have distinct meanings. (*Cabrera*, *supra*, 14 Cal.5th at pp. 490–491.)

For purposes of California's Three Strikes law, "any felony in which the defendant personally inflicts great bodily injury on any person, other than an accomplice" constitutes a serious felony. (§ 1192.7, subd. (c)(8).) "Any felony in which the defendant inflicts great bodily injury on a person other than an accomplice" is also categorized as a violent felony meriting special consideration when imposing a sentence. (§ 667.5, subd. (c)(8).)

### 3. Analysis

Assuming without deciding that count 2 contained an element of great bodily harm for purposes of section 12022.7, subdivision (g), we conclude that substantial evidence supports the jury's true finding on the allegation associated with count 2. Consistent with this court's decision in *Jose H.*, the section 12022.7, subdivision (a) allegation associated with count 2 was not an enhancement, and thus section 12022.7, subdivision (g) does not prohibit a true finding on this allegation.

While the prosecution at one point in closing argument referred to the great bodily injury allegations associated with counts 1 and 2 as "enhancements," the record otherwise consistently uses the term "factual allegation" to refer to the allegation associated with count 2. More importantly, defendant experienced no risk of an additional term of imprisonment as a result of this allegation, and thus the allegation is not an enhancement covered by section 12022.7, subdivision (g). " 'The statutory purpose of the

36

Legislature's [great bodily injury] enhancement regime is not to maximize punishment under every pleading artifice a prosecutor can device, but instead to "deter[] the use of excessive force and the infliction of *additional harm beyond that inherent in the crime itself.*" [Citation.]' " (*People v. Cook* (2015) 60 Cal.4th 922, 933 (*Cook*).) Thus, section 12022.7, subdivision (g) " 'provides a [great bodily injury] enhancement "*shall not apply* if infliction of great bodily injury is an element of the offense" . . . .' " (*Cook, supra*, at p. 933.) " 'Ordinarily words used in a statute are presumed to be used in accordance with their established legal or technical meaning.' [Citation.] The term 'enhancement' has a well-established technical meaning in California law. [Citation.] 'A sentence enhancement is "an additional term of imprisonment added to the base term." ' [Citations.]" (*People v. Burke* (2023) 89 Cal.App.5th 237, 243.)

Here, the allegation associated with count 2 exposed defendant to no additional punishment. The record provides no indication that either the parties or the trial court envisioned that defendant could be sentenced to an additional term of imprisonment based on this allegation. Thus, section 12022.7, subdivision (g) does not prohibit a true finding on this allegation. Defendant alternatively asserts that the denial of his motion to strike the allegation associated with count 2 resulted in an unauthorized sentence, but as the factual allegation concerning count 2 was not an enhancement and did not increase defendant's sentence, we do not see how denial of defendant's motion to strike the allegation resulted in an unauthorized sentence.

Defendant cites *People v. Hawkins* (2003) 108 Cal.App.4th 527 (*Hawkins*) to argue that *Jose H.* was wrongly decided. In *Hawkins*, the defendant was convicted of battery with serious bodily injury. (*Hawkins, supra*, at p. 530.) A section 12022.7, subdivision (a) allegation associated with the battery with serious bodily injury count was not submitted to the jury and was subsequently struck. (*Hawkins, supra*, at p. 530.) The Court of Appeal held that "battery with serious bodily injury cannot qualify as a violent felony under section 667.5, subdivision (c)(8), even if it includes a great bodily injury

37

allegation under section 12022.7, unless the crime was committed under circumstances involving domestic violence. [Citation.]" (*Id.* at p. 531.) In so holding, the court disagreed with *Jose H.*, stating: "The proffered purpose for charging the enhancement [in *Jose H.*] was unfounded. The minor's crime qualified as a strike because it was a serious felony under section 1192.7, subdivision (c)(8). In any event, section 12022.7 by its own terms does not apply to crimes in which infliction of great bodily injury is an element of the offense unless the crime is committed under circumstances involving domestic violence, and the statute is not intended to be utilized for any purpose other than as a sentence enhancement." (*Hawkins*, *supra*, at p. 531.)

*Hawkins* does not support defendant's position. Its holding was focused on its interpretation that under the version of section 12022.7 then in existence, battery with serious bodily injury that was not committed under circumstances involving domestic violence cannot qualify as a violent felony under section 667.5, subdivision (c)(8), even if it includes a great bodily injury allegation under section 12022.7. The *Hawkins* court's disagreement with *Jose H.* was premised on the *Hawkins* court's conclusion that the section 12022.7, subdivision (a) allegation in *Jose H.* was not for the purpose of qualifying the minor's offense as a strike. Here, the record demonstrates that the prosecution included the great bodily injury allegation to qualify count 2 as a serious felony, not to add a term of imprisonment. *Hawkins* did not hold that a factual allegation under section 12022.7, subdivision (a) must be considered an enhancement for purposes of section 12022.7, subdivision (g), and the court in *Hawkins* emphasized "the technical nature of our conclusion" that battery with serious bodily injury cannot be defined as a serious felony unless it is committed under circumstances involving domestic violence. (*Hawkins*, *supra*, 108 Cal.App.4th at p. 531.) The meaning of the term "enhancement" is well-established and does not encompass a factual allegation that is included merely to characterize an offense as a serious felony, not to add to a defendant's term of imprisonment. The California Supreme Court has cited *Jose H.* with approval.

38

(*People v. Feyrer* (2010) 48 Cal.4th 426, 442, fn. 8, superseded by statute on other grounds as recognized in *People v. Lee* (2017) 16 Cal.App.5th 861, 872; *People v. Sloan* (2007) 42 Cal.4th 110, 119–120.) We see nothing about *Hawkins* that compels a position different from that outlined in *Jose H.*[8]

Section 12022.7, subdivision (g) has been interpreted to apply to an enhancement, not a factual allegation for characterizing an offense as serious or violent felony. Consistent with this court's opinion in *Jose H.* and the meaning of the term "enhancement," the allegation associated with count 2 is not an enhancement, and thus section 12022.7, subdivision (g) does not prohibit the true finding on this factual allegation.

### F. *Application of Section 654*

Defendant contends that the great bodily injury enhancement to count 1 should be stayed pursuant to section 654. In his opening brief, he argued that "section 654 prohibited imposing punishment for both the count 1 [great bodily injury] . . . enhancement and count 2 because [great bodily injury] is an element of count 2." Thus, defendant asserted that his case should be remanded for resentencing to allow the trial court to exercise its discretion to sentence him under either the concurrent two-year term for the count 2 conviction or the three-year great bodily injury enhancement to count 1.

The Attorney General agrees that section 654 requires modifying defendant's sentence, but for a different reason and with different application. Noting that section 654 prohibits multiple punishments for a single physical act that violates different provisions of law, the Attorney General argues: "As [defendant's] conviction for assault by means of force likely to produce great bodily injury (count one) in which he was

---

[8] Defendant also cites *People v. Ahmed* (2011) 53 Cal.4th 156 and *People v. Beltran* (2000) 82 Cal.App.4th 693 in asserting that the great bodily injury factual allegation here could not be found true because great bodily injury is an element of battery with serious bodily injury. We see nothing in these opinions that supports defendant's argument.

found to have personally inflicted great bodily injury [citation] and his conviction for battery with serious bodily injury arose from one attack on one victim, respondent agrees that the court was required to apply section 654 and stay [defendant's] punishment either as to count two (for battery with serious bodily injury) or to count one (for assault by means of force likely to cause great bodily injury). Because the punishment for one of the crimes must be stayed, there is no need to resort to [defendant's] approach of analyzing the stay issue in terms of the great bodily injury enhancement and the punishment for battery causing serious bodily injury." (Fn. omitted.) The Attorney General then contends that remand for resentencing is not required for the trial court to determine which count to stay punishment for, because "the trial court's comments at the sentencing hearing made clear that the court would impose the higher term for the assault conviction with the great bodily injury enhancement in count one and stay the two year concurrent term imposed for the battery conviction in count two."

In reply, defendant agrees with the Attorney General's position that section 654 applies to counts 1 and 2 because they arose out of the same physical act by defendant, and that therefore this court does not need to analyze the issue in terms of count 1's great bodily injury enhancement. However, defendant maintains that remand for resentencing is required because "[h]ad the trial court been aware of its discretion, it would not necessarily have stayed the shorter term."

### 1. Factual Background

Defendant was charged in count 1 with assaulting the hotel general manager on or about August 30, 2021 by means likely to produce great bodily injury. Defendant was charged in count 2 with committing battery with serious bodily injury against the same victim on or about the same date as count 1. The prosecution's theory at trial was that both counts arose out of the same acts by defendant in punching the victim. The prosecutor stated in his closing argument that count 2 involved "a different legal theory for the same conduct, almost the same conduct" as count 1.

40

Defendant's motion to dismiss the count 1 enhancement or the great bodily injury allegation associated with count 2 did not mention section 654, and the application of section 654 was not discussed at defendant's sentencing hearing. The trial court denied defendant's motion to dismiss the count 1 enhancement, recognizing its discretion to dismiss the allegation under section 1385 but noting that "based upon the overall conduct in this case, the defendant's criminal history, and all other facts and circumstances," dismissal of the enhancement was not warranted. During sentencing, the trial court commented at points upon the severity of defendant's crimes and indications that defendant did not express remorse for his actions. After defendant gave a statement at sentencing apologizing for his actions and asking to be placed on probation, the trial court stated as follows: "This has been a difficult case for me to determine what is appropriate. Defendant was extremely violent in this situation with no provocation whatsoever. The Court is concerned about the defendant's ongoing violence with minimal, if any, provocation." The trial court also noted defendant's "significant and serious criminal history." However, the trial court also stated: "That criminal history is relatively old, and he has shown an ability to comply with the terms and conditions of probation and lead a law-abiding life for a period of time." The trial court then stated: "[I]n this matter I'm going to give the defendant an opportunity, but a minor opportunity" by suspending execution of the sentence. Thus, the trial court imposed the mitigated term of two years for count 1, a three-year term for the great bodily injury enhancement associated with count 1, a concurrent mitigated sentence of two years for count 2, and a consecutive sentence of one-third of the middle term (eight months) for count 3. The trial court thus imposed a total term of five years eight months with execution of the sentence suspended, and the trial court placed defendant on probation for three years.

### 2. Legal Principles and Standard of Review

Section 654, subdivision (a) states in relevant part: "An act or omission that is punishable in different ways by different provisions of law may be punished under either

of such provisions, but in no case shall the act or omission be punished under more than one provision." "The statutory purpose underlying section 654 'is to ensure that a defendant's punishment will be commensurate with his [or her] culpability.' [Citation.] To that end, the statute prohibits courts from imposing multiple punishment for the same act or omission . . . ." (*People v. Kelly* (2018) 28 Cal.App.5th 886, 904.) "If a single action or course of conduct by a defendant violates multiple laws, 'the distinct crimes may be charged in separate counts and may result in multiple verdicts of guilt, [but] the trial court may impose sentence for only one offense . . . .' [Citation.]" (*People v. Sek* (2022) 74 Cal.App.5th 657, 673.)

"Section 654 does not allow any multiple punishment, including either concurrent or consecutive sentences. [Citation.]" (*People v. Deloza* (1998) 18 Cal.4th 585, 592.) "Imposition of concurrent sentences is not the correct method of implementing section 654, because a concurrent sentence is still punishment. [Citations.]" (*People v. Alford* (2010) 180 Cal.App.4th 1463, 1468 (*Alford*).) " 'It has long been established that the imposition of concurrent sentences is precluded by section 654 [citations] because [under such a sentence] the defendant is deemed to be *subjected* to the term of *both* sentences although they are served simultaneously.' [Citations.]" (*People v. Duff* (2010) 50 Cal.4th 787, 796.)

"When a court determines that a conviction falls within the meaning of Penal Code section 654, it is necessary to *impose* sentence and to stay the *execution* of the duplicative sentence. [Citations.] The trial court is required to impose judgment on each count, which involves selecting a term, and then staying execution of the duplicative sentence, the stay to become permanent upon defendant's service of the portion of the sentence not stayed. [Citations.] 'This procedure ensures that the defendant will not receive "a windfall of freedom from penal sanction" if the conviction on which the sentence has not been stayed is overturned.' [Citation.] Thus, it is improper to impose no sentence or to stay *imposition* of the sentence. [Citation.]" (*People v. Mani* (2022)

74 Cal.App.5th 343, 380 (*Mani*).)  "Accordingly, after determining which sentence to execute, courts must impose a sentence on the other count to which Penal Code section 654 applies and then *stay execution of that sentence* pursuant to Penal Code section 654, subdivision (a), the stay to become permanent upon defendant's service of the portion of the sentence not stayed.  [Citations.]"  (*Ibid.*)

" ' "Defendants are entitled to sentencing decisions made in the exercise of the 'informed discretion' of the sentencing court." ' [Citation.]  ' "[A] court that is unaware of its discretionary authority cannot exercise its informed discretion." ' [Citation.] 'Generally, when the record shows that the trial court proceeded with sentencing on the erroneous assumption it lacked discretion, remand is necessary so that the trial court may have the opportunity to exercise its sentencing discretion at a new sentencing hearing.' [Citation.]"  (*People v. Czirban* (2021) 67 Cal.App.5th 1073, 1096–1097.)  When a trial court demonstrates it lacked awareness of its sentencing discretion, remand is required unless the record provides a "clear indicator of how the trial court would exercise" its discretion.  (*People v. Dryden* (2021) 60 Cal.App.5th 1007, 1033 (*Dryden*).)

### 3.  Analysis

Consistent with the parties' agreement, we conclude that the trial court was required under section 654 to stay the execution of the sentence for either count 1 or count 2, as both counts arose from the same acts by defendant.  While defendant did not raise the applicability of section 654 to the sentencing court, the forfeiture doctrine does not apply to claims of error under section 654.  (*People v. Scott* (1994) 9 Cal.4th 331, 354, fn. 17 ["It is well settled . . . that the court acts in 'excess of its jurisdiction' and imposes an 'unauthorized' sentence when it erroneously stays or fails to stay execution of a sentence under section 654.  [Citations.]"]; *People v. Perez* (1979) 23 Cal.3d 545, 549, fn. 3 ["[T]he waiver doctrine does not apply to questions involving the applicability of section 654.  Errors in the applicability of section 654 are corrected on appeal regardless of whether the point was raised by objection in the trial court or assigned as error on

43

appeal.  [Citations.]"].)  The Attorney General also does not argue that section 654 was satisfied because the trial court suspended the execution of the entirety of defendant's sentence and instead placed defendant on probation, and we accept the Attorney General's position that section 654 applies here.  (Cf. *People v. Govan* (2023) 91 Cal.App.5th 1015, 1034–1035 [recognizing a distinction between suspending execution of a sentence and staying a sentence in the interplay between section 654 and section 667.61, subdivision (h)].)  We determine that the trial court erred in not staying the execution of the sentence for either count 1 or count 2.

Section 654 was amended effective January 1, 2022, to provide the trial court in the instant case with the authority to impose and execute the sentence for either count 1 or count 2 instead of imposing the sentence that provides for the longest potential term of imprisonment and staying execution of the other term.  (Stats. 2021, ch. 441, § 1.) Defendant's sentencing hearing took place on November 3, 2022, well after the effective date of the amendment to section 654.  Nonetheless, the lack of discussion regarding section 654 at sentencing and the trial court's imposition of a concurrent term for count 2 demonstrate that the trial court was unaware of its discretion to stay execution of the sentence for either count 1 or 2.  (See *Alford*, *supra*, 180 Cal.App.4th at p. 1468 ["[T]he imposition of concurrent terms is treated as an implied finding that the defendant bore multiple intents or objectives, that is, as a rejection of the applicability of section 654. [Citations.]"].)

While the trial court erred in imposing concurrent sentences and not staying execution of the sentence for either count 1 or count 2, remand for resentencing is not required.  The record provides a clear indicator that the trial court would have opted to stay the sentence for count 2, which carried an upper term of four years (§ 243, subd. (d)), rather than staying the sentence for count 1, which included a great bodily injury enhancement.  The trial court imposed a sentence of five years on count 1 including the great bodily injury enhancement.  The trial court repeatedly noted the

severity of defendant's actions at the sentencing hearing. Defendant moved to dismiss the enhancement for count 1 or the punishment for the count 1 enhancement. The trial court declined to do so, determining that it was not in the interest of justice to strike the enhancement and the associated three-year additional prison term. It imposed the two-year mitigated term for count 2 concurrent to the sentence for count 1 and count 1's enhancement, and it imposed a total sentence of five years eight months. While the sentencing court did express conflict as to how much leniency to grant defendant and the court did suspend execution of the sentence to place defendant on probation, the sentencing court emphasized that it was providing defendant a "minor opportunity," and the trial court stressed to defendant: "If you violate any single term or condition on probation, you're going to prison. We're done. There's no discussion. No talking. It's done." This demonstrates that the trial court wanted to sentence defendant to a lengthy term in the event defendant violated his probation. Nothing in the record indicates the trial court would have been inclined to stay the execution of the sentence for count 1— including the associated three-year term for the great bodily injury enhancement—in favor of a shorter sentence for count 2. In this situation, the record provides a "clear indicator" of how the trial court would exercise its discretion under section 654. (*Dryden*, *supra*, 60 Cal.App.5th at p. 1033.) We will order the sentence on count 2 to be imposed and stayed pursuant to section 654.

### G. *Cumulative Error*

Defendant argues that the cumulative prejudicial effect of the alleged errors arose from a "sham" trial in which "[t]he aggregate prejudicial effect of the errors complained of was greater than the sum of the prejudice of each error standing alone." "The premise behind the cumulative error doctrine is that, while a number of errors may be harmless taken individually, their cumulative effect requires reversal. [Citations.]" (*Mani*, *supra*, 74 Cal.App.5th at p. 378.) We have found no error or no prejudice regarding the issues defendant raises above, and we conclude that the cumulative prejudicial effect of the

errors complained of does not warrant relief.  Thus, we reject defendant's cumulative error argument.

## IV.  DISPOSITION

The order of probation is ordered modified to reflect that the sentence for count 2 is imposed and that execution of the sentence for count 2 is stayed pursuant to Penal Code section 654.  As so modified, the order of probation is affirmed.

_____

BAMATTRE-MANOUKIAN, ACTING P.J.

WE CONCUR:

_____
DANNER, J.


_____
BROMBERG, J.

**_People v. Williams_**
**H050555**